**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HERITAGE FOUNDATION, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>        Defendant. | Case No. 24-cv-200-RBW |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant the U.S. Department of Justice ("the Department") hereby moves for summary judgment on the adequacy of its search and on the propriety of its withholdings under the Freedom of Information Act., for the reasons set forth in the enclosed Memorandum of Law and attached Statement of Undisputed Material Facts.

Dated:  June 28, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Jason C. Lynch*
JASON C. LYNCH (D.C. Bar No. 1016319)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

HERITAGE FOUNDATION, *et al.*,

           Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF
JUSTICE,

           Defendant.

Case No. 24-cv-200

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT........................................................................................................................... 5

I.  THE DEPARTMENT REASONABLY INTERPRETED PLAINTIFFS' REQUEST, CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO THAT INTERPRETATION, AND PROPERLY WITHHELD CERTAIN RECORDS AND INFORMATION. ........................................... 5

    A.  The Department Reasonably Interpreted Plaintiffs' Request. ............................... 5

    B.  The Department Conducted an Adequate Search. ..................................................... 9

        1.  The Office of Legislative Affairs..................................................................... 10

        2.  The Office of Public Affairs. .......................................................................... 10

        3.  The Office of the Attorney General................................................................. 11

    C.  The Department Properly Withheld Certain Records and Information from Its Responses. ................................................................................................................... 12

        1.  Records Withheld Under Exemption 5. ........................................................... 12

CONCLUSION ..................................................................................................................... 15

**INTRODUCTION**

Plaintiffs submitted a Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") request for all records "relied upon" by the Attorney General of the United States when he made 17 specific statements at five public events. These statements mostly concerned the investigation and prosecution of Hunter Biden, and specifically the authority of then-U.S. Attorney, now Special Counsel, David Weiss. After initially denying Plaintiffs' request, the Department agreed to search for records responsive to a reasonable interpretation of that request—namely, for records that were reasonably likely to have been made available to the Attorney General in preparation for the five events at issue, and which bore on the same topics as the 17 statements quoted by Plaintiffs. The Department found 755 pages of such records and released 673 of them to Plaintiffs (478 of which were withheld in part). The other 82 pages were withheld in full.

The Department now moves for summary judgment on the adequacy of its search and the validity of its withholdings. The Court should grant the motion for three reasons:

*First*, the Department reasonably interpreted Plaintiffs' request. "Relied upon" is a vague and ambiguous term. In the context of extemporaneous answers given to questions in real time, the Department reasonably interpreted it to mean any relevant records used to prepare for the events at which the answers were given. Plaintiffs' view is that, for the search to be adequate as a matter of law, the Department was required to do much more—namely, to interview the Attorney General himself and ask him what he "relied upon" subjectively when he made each of the 17 statements at issue. The law does not require that. FOIA is not a means to question government officials; it is merely a vehicle to obtain records. And as a practical matter, if Plaintiffs' approach were applied to the tens of thousands of FOIA requests submitted each year—or even to a subset of them—it would functionally incapacitate government officials by subjecting them to unending interviews under the guise of FOIA requests.

1

*Second*, having reasonably interpreted Plaintiffs' request, the Department conducted an adequate search for records responsive to that interpretation. The 17 statements at issue were made by the Attorney General at three congressional hearings and two press conferences. The Department therefore searched its Office of Legislative Affairs' ("OLA's") repository of records used to prepare the Attorney General for congressional testimony; its Office of Public Affairs ("OPA") for records used to prepare the Attorney General for press conferences; and the Office of the Attorney General ("OAG"), which also supports the Attorney General in advance of public appearances and maintains records used in such support. Employees familiar with the Attorney General's preparation process were consulted throughout, and all potentially-responsive records that were identified were reviewed manually for responsiveness and disclosure. This process more than satisfies FOIA's requirements for a reasonable search.

*Third*, the Department justifiably withheld 82 pages in full under FOIA Exemption 5. These pages comprised transcript excerpts and talking points, collected and prepared for use in preparing the Attorney General to testify before Congress. They are all internal documents, used to aid Department employees in strategizing, planning, and preparing for such testimony. Revealing them would chill free and frank deliberations within the Department and potentially confuse the public, both of which are harms that Exemption 5 aims to prevent. Accordingly, the pages were properly withheld in full.

For these reasons, the Court should enter summary judgment in Defendant's favor.

## BACKGROUND

Plaintiffs submitted a FOIA request, dated August 15, 2023, sought all records "relied upon" by the Attorney General when making 17 different statements at three congressional hearings and two press conferences. Statement of Undisputed Material Facts ("SUMF") ¶¶ 1–6. As Plaintiffs put it, these statements "regard[ed] the authority of [then] U.S. Attorney David Weiss

[] over the ongoing investigation into Robert Hunter Biden, the son of the President of the United States." Compl. ¶ 1, ECF No. 1. For example, the statements include:

- "He [U.S. Attorney Weiss] is supervising the investigation. And I'm, you know, I'm not at liberty to talk about internal Justice Department deliberations, but he is in charge of that investigation. There will not be interference of any political or improper kind." *Id.* ¶ 10 (alteration in original) (citation omitted).

- "The—the US attorney in Delaware has been advised that he has full authority to—to make those kind of referrals that you're talking about, or to bring cases in other jurisdictions if he feels it's necessary. And I will assure that, if he does, he will be able to do that." *Id.* (citation omitted).

The Department's Office of Information Policy ("OIP") initially denied the request on the following grounds:

> You have requested records "relied upon" by Attorney General Merrick Garland when making various comments. Such a request is not reasonably described in a way that will allow agency personnel to conduct an appropriate records search in that it would require Department personnel to conduct research, analysis, and formulation of opinions in order to determine which records were "relied upon" by Attorney General Garland. As such, your request is not seeking specific records, but rather records that would only be responsive to your request based on our research into the subjective question of whether and for what purpose they were used by Attorney General Garland.

Resp. from OIP 1 (Aug. 25, 2023), ECF No. 1-16. OIP added: "If you are seeking specific records related to the comments of Attorney General Garland, you can submit such a request to this Office." *Id.*

Plaintiffs appealed administratively from that denial and later brought this lawsuit. *See* Compl. ¶ 19. Thereafter, the Department determined that it could conduct a search for records responsive to a reasonable interpretation of the request—specifically, interpreting "relied upon" to mean records prepared for use in preparing the Attorney General to speak at the five events, and relating to the specific topics, covered by Plaintiffs' request. *See* Decl. of Bobak Talebian (June 28, 2024) ("Talebian Decl.") ¶ 7.

The Department's search and processing took several months and culminated in two releases. On April 12, 2024, the Department released 671 pages, 478 of which contained a single redaction under FOIA Exemption 6 (5 U.S.C. § 552(b)(6)). *See* SUMF ¶ 32. Plaintiffs have agreed not to challenge that withholding. Talebian Decl. ¶ 10. The Department also withheld 82 pages in full under FOIA Exemption 5 (5 U.S.C. § 552(b)(5)). SUMF ¶ 32. On April 26, 2024, the Department made its final response and released another two pages in full. *Id.* ¶ 33.

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment," *Manna v. U.S. Dep't of Just.*, 106 F. Supp. 3d 16, 18 (D.D.C. 2015) (quoting *ViroPharma Inc. v. U.S. Dep't of Health & Human Servs.,* 839 F.Supp.2d 184, 189 (D.D.C.2012), supported by nonconclusory agency affidavits or declarations, *see id.* (citing *SafeCard Servs., Inc., v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

To prevail at summary judgment on the adequacy of its search, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). An agency need not "search every record system" or "demonstrate that all responsive documents were found and that no other relevant documents could possibly exist." *Id.* (quoting *Oglesby*, 920 F.2d at 68). Rather, "[a]n agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Id.* (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)).

At summary judgment, the agency is also required to demonstrate that any withheld information is properly exempt under one of FOIA's nine exemptions. *Id.* at 451. That burden is

4

often carried by "supporting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* (quoting *Elec. Frontier Found. v. U.S. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014)).

## ARGUMENT

**I.    THE DEPARTMENT REASONABLY INTERPRETED PLAINTIFFS' REQUEST, CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO THAT INTERPRETATION, AND PROPERLY WITHHELD CERTAIN RECORDS AND INFORMATION.**

### A.    The Department Reasonably Interpreted Plaintiffs' Request.

FOIA requires that the requestor "reasonably describe[]" the records sought. 5 U.S.C. § 552(a)(3)(A). "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'" *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Yeager v. Drug Enf't Agency*, 678 F.2d 315, 326 (D.C. Cir. 1982)). The responsibility rests firmly on the requester "to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome." *Assassination Archives & Rsch. Ctr., Inc. v. Cent. Intel. Agency*, 720 F. Supp. 217, 219 (D.D.C. 1989); *see also Leopold v. U.S. Dep't of Just.*, 301 F. Supp. 3d 13, 23 (D.D.C. 2018).

The request must also reasonably describe *records*. "FOIA is a mechanism to obtain access to records, not answers to questions." *Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 456 (D.D.C. 2016), *aff'd*, *Jud. Watch, Inc. v. U.S. Dep't of State*, 681 F. App'x 2 (D.C. Cir. 2017); *see also Am. Immigr. Council v. U.S. Immigr. & Custom Enf't*, 464 F. Supp. 3d 228, 245 (D.D.C. 2020) ("FOIA neither requires an agency to answer questions disguised as a FOIA request . . . or to create documents or opinions in response to an individual's request for information." (alteration

5

in original) (quoting *Hudgins v. Internal Revenue Serv.*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987)); *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 931 F. Supp. 2d 77, 103 (D.D.C. 2013) (accepting the agency's argument that "FOIA does not oblige [an agency] to create new records or to answer questions about agency records").

As opposed to the typical FOIA request, which seeks a particular record or even all records about a particular subject matter, Plaintiffs' request seeks all records "relied upon" by the Attorney General when he made 17 different statements in response to questions at three congressional hearings and two press conferences. These statements were extemporaneous and oral. They mentioned no documents, contained no footnotes, and were made without reference to written remarks. They were also general. For example, Mr. Garland said that David Weiss, then the U.S. Attorney in Delaware, was "the supervisor of th[e Hunter Biden] investigation." Compl. ¶ 10, ECF No. 1. As the Attorney General of the United States, Mr. Garland would hardly need to consult a particular record to know that a U.S. Attorney supervises investigations being conducted by his office. Nor would Mr. Garland need to rely on any particular record for the "longstanding rule of the Justice Department [that] we don't discuss investigations or evidence that maybe—may or may not be relevant to investigations." *Id.*

The term "relied upon" is inherently vague and ambiguous, subject to multiple interpretations. A speaker "relies upon" the entirety of his knowledge whenever he answers any question. But FOIA requestors cannot probe knowledge or experience; they can only obtain records. And they submit FOIA requests to the agency, not to a particular official. Interpreting Plaintiffs' request to require the agency to try to discover the panoply of background facts and records an official subjectively drew on when making extemporaneous remarks plainly exceeds what is required or viable under FOIA. Under such an interpretation, which the Department understands Plaintiffs to advance here, the Department would clearly have been required to deny

6

the request (as the Department initially did), since it would not have been possible for the agency to craft a reasonable search for responsive records. *See Nat'l Sec. Couns. v. Cent. Intel. Agency*, 969 F.3d 406, 410 (D.C. Cir. 2020) (citing *Am. Fed'n of Gov't Emps. Local 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990)).

The Department continues to oppose interpreting Plaintiffs' request in a manner that FOIA does not require. Here, however, the Department applied a reasonable interpretation that allowed it to conduct a search: it interpreted "relied upon" to mean records prepared for use in preparing the Attorney General to speak at the five events, and relating to the specific topics, covered by Plaintiffs' request. *See* Talebian Decl. ¶ 7. That interpretation was reasonable, in part, because the 17 statements at issue were extemporaneous and offered in response to questions posed in real time. The Department could have adopted even narrower constructions of Plaintiffs' request: only those records that the Attorney General specifically mentioned or cited in his statements, or only those records that he had before him when he made his remarks. But the Department chose to interpret Plaintiffs' request reasonably and in accordance with FOIA—which it was entitled to do. *See Leopold*, 301 F. Supp. 3d at 23-27 (D.D.C. 2018) (where a "literal construction of th[e] request" would have been "overly broad, unduly burdensome, and inadequate to describe the records sought," the agency was allowed to adopt a narrower, reasonable interpretation).

Apparently, Plaintiffs believe this approach was inadequate as a matter of law under FOIA and that the law instead required the Department to interview the Attorney General about what he relied upon. *See* June 10, 2024 email from Plaintiffs' counsel, attached as Ex. 1 to June 12, 2024 Decl. of Max Taylor Matheu, ECF No. 19-1. Plaintiffs are wrong. The law does not require the Department to apply a subjective filter to a records request that can only be satisfied through questioning. Interpreted that way, Plaintiffs' request would not have been proper and was properly denied. As an initial matter, "FOIA is a mechanism to obtain access to records, not answers to

7

questions." *Jud. Watch, Inc.*, 177 F. Supp. 3d at 456 (quoting *Amnesty Int'l USA v. Cent. Intel. Agency*, No. 07-cv-5435-LAP, 2008 WL 2519908 (S.D.N.Y. June 19, 2008)); *cf. Espinoza v. Dep't of Just.*, 20 F. Supp. 3d 232, 245 (D.D.C. 2014) ("Plaintiff's dispute is based on the faulty premise that the FOIA obligates the government to answer questions apparently about any governmental action."). Nor is the Department obligated to certify, under the guise of designating a record as responsive to a request for all records "relied upon" for an official's statement, what any official was thinking at a given moment. That is, an agency need not "answer questions disguised as a FOIA request." *Lamb v. Internal Revenue Serv.*, 871 F. Supp. 301, 304 (E.D. Mich. 1994) (citing *Di Viaio v. Kelley,* 571 F.2d 538, 542 (10th Cir. 1978)).

While an agency "cannot refuse to conduct a search simply because a request is framed as a question," *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 585 (D.C. Cir. 2020), not all questions are answerable under FOIA. For example, OIP invited Plaintiffs to seek records "related to" the Attorney General's statements. Talebian Decl. ¶ 6. That, too, would have required the agency to answer a question: which records are "related to" the statements? But *that* question can be answered objectively by a FOIA officer, without having to ask the speaker or opine on his thought process. The question posed by Plaintiffs' request—at least, as they would interpret it—cannot.

Moreover, if the Department has to ask the Attorney General what he relied upon for the 17 statements he made that are at issue here in order to respond to the request, it would have to do so for all FOIA requests so framed. That would threaten to interfere significantly with the Attorney General's, and other high-ranking government officials', ability to do their jobs. There can be little question that an order requiring the Department to interview the Attorney General for purposes of this FOIA request will cause other FOIA requesters to seek the same—not only for the Attorney General, but senior officials across the federal government. Indeed, the Department is currently litigating other "relied upon" FOIA requests from Plaintiffs, directed at Special Counsels Robert

Hur and David Weiss. *See Heritage Found. v. U.S. Dep't of Just.*, No. 1:24-cv-645-DLF (D.D.C.) (Special Counsel Hur); *Heritage Found. v. U.S. Dep't of Just.*, No. 1:24-cv-53-MN (D. Del.) (Special Counsel Weiss). Extrapolated to all such requests—and those that would surely follow—the results would be severe.

Plaintiffs rely on *Public Employees for Environmental Responsibility v. United States Environmental Protection Agency*, 314 F. Supp. 3d 68 (D.D.C. 2018), but that case does not help them here. To be sure, the court in *PEER* rejected EPA's position that it did not have to respond at all to the FOIA request for records "relied upon" by the EPA Administrator in making a statement to the media. *Id.* at 76. But, as discussed above, that is not the case here. Instead, the Department here invited Plaintiffs to seek records "related to" the Attorney General's statements. The court in *PEER* court pointed with approval to such engagement: EPA's initial offer to search for briefing materials that were prepared for the Administrator in advance of the media interview as a way of responding to the request. *Id.* at 78; *see also id.* at 72–73. Ultimately, the court in *PEER* held that "any agency records compiled, prepared, provided, used, or reviewed by Administrator Pruitt in connection with his [statements] must be searched for and disclosed unless exempt." *Id.* at 77, 78. That is, essentially, how the Department interpreted "relied upon" here. The *PEER* court did not order EPA to interview the EPA Administrator, let alone do so to discover what was in his head when he made his statements.

## B.    The Department Conducted an Adequate Search.

Having reasonably interpreted Plaintiffs' FOIA request, the Department conducted a search for all records responsive to that interpretation—that is, all records reasonably likely to have been made available to the Attorney General in preparation for the five events subject to Plaintiffs' request and touching on the topics referenced in the 17 statements quoted by Plaintiffs. *See* Talebian Decl. ¶ 12.

9

### 1.    The Office of Legislative Affairs.

Because 12 of the 17 statements in Plaintiffs' request were made at congressional hearings, the logical starting place was the Department's Office of Legislative Affairs ("OLA"). Among other responsibilities, that office prepares the Attorney General and other Department officials to give testimony before congressional committees. *Id.* ¶ 15.

OLA helps create the materials used to prepare such officials for congressional testimony. *Id.* In most cases, OLA stores those materials in a manner that is organized by hearing. *Id.* ¶ 17. As such, a search was conducted of OLA's repository of materials specifically for records related to the three hearings referenced in Plaintiffs' request. *Id.* ¶ 19. Those potentially-responsive records were then reviewed manuallto see which of them related to topics comparable to those in Plaintiffs' FOIA request. *Id.* 753 pages of such records were located within OLA. *Id.* ¶ 20.

Finally, any need to search for email records within OLA was ruled out. *Id.* ¶ 18. As those familiar with the hearing-preparation process confirmed, any records of communications among staffers regarding the Attorney General's preparation process—if they existed—would not have been made available to the Attorney General, and thus could not have been "relied upon" by him in any conceivable sense. *Id.*

### 2.    The Office of Public Affairs.

Because the other five statements in Plaintiffs' request were made at two press conferences, it was reasonable for the Department to also search for records within its Office of Public Affairs ("OPA"). Among other responsibilities, OPA helps prepare the Attorney General and other Department officials for press conferences. Talebian Decl. ¶ 22.

Importantly here, none of the five statements made at press conferences pertained to the subjects of those press conferences. *Compare* Compl. ¶ 10 (statements) *with* SUMF ¶¶ 5–6 (subjects of press conferences). Instead, the Attorney General's statements were in response to off-topic questions asked by reporters in attendance. OPA typically prepares the Attorney General for

10

such off-topic questions verbally and does not typically prepare written material for the Attorney General except for the prepared remarks for the event. Talebian Decl. ¶ 24. It is understandable, therefore, that no responsive records were found in OPA when preparatory materials related to the press conferences cited in Plaintiffs' request were searched. *Id.* ¶ 24. Finally, as with OLA, it was determined that a search for email records within OPA was unnecessary because communications among staff would not have been made available to the Attorney General. *Id.* ¶ 13.

### 3.    The Office of the Attorney General.

OAG maintains materials used to prepare the Attorney General for public appearances, including congressional hearings and press conferences. *Id.* ¶ 26. At times, OAG may prepare its own materials, too. *Id.* A search was conducted within OAG for materials relevant to the three hearings at issue, which found two pages of materials that both (1) were reasonably likely to have been made available to the Attorney General and (2) pertained to topics comparable to those discussed in the statements cited in Plaintiffs' FOIA request. *Id.* OAG also searched for records used to prepare the Attorney General for the two press conferences at issue. *Id.* But like OPA, OAG was not able to find any such materials that bore on the subjects of the 17 statements in Plaintiffs' request. *Id.* Finally, it was determined with respect to OAG—for the same reasons as with OLA and OPA—that there was no need to search for email records. *Id.* ¶ 13.

\*        \*        \*

The search in this case proceeded comprehensively through the three Department offices likely to have responsive records, drawing upon employees with knowledge of the Attorney General's preparation process. The Department "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Watkins L.*, 78 F.4th at 442 (citation omitted). That satisfies FOIA.

11

### C.    The Department Properly Withheld Certain Records and Information from Its Responses.

#### 1.    Records Withheld Under Exemption 5.

The Department withheld 82 pages of records under FOIA Exemption 5, which exempts "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" 5 U.S.C. § 552(b)(5).[1] Exemption 5 encompasses the deliberative-process privilege, which "shields documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Watkins L.*, 78 F.4th at 451 (quoting *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The 82 withheld-in-full pages meet all of Exemption 5's requirements.

First, these pages are "intra-agency memorandums or letters." *Id.*; *see* Talebian Decl. ¶ 30.[2] Four of the 82 pages were transcript excerpts from prior congressional hearings, selected specifically for use in preparing for upcoming appearances. *Id.* The other 78 pages were talking points drafted to address a variety of potential topics. *Id.* Because these documents were prepared and used within the Department, they qualify as "intra-agency" under FOIA Exemption 5.

Second, the 82 pages are both predecisional and deliberative. *Id.* ¶¶ 31–34. They were crafted—or in the case of the prior excerpts, specifically curated—for the purpose of preparing the Attorney General for hearings that had not yet occurred and on hypothetical questions that had not yet been asked. *Id.* Accordingly, at the time they were drafted, the Attorney General would not yet

---

[1] Exemption 5 provides an additional proviso: "that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." *Id.* § 552(b)(5). There is no question in this case that any responsive record would, by definition, be less than 25 years old.

[2] Courts do not construe "memorandums" and "letters" literally, but rather as exempting any "document[]" that would be "normally privileged in the civil discovery context." *Nat'l Lab.or Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, at 149 (1975). "Congress enacted Exemption 5 to protect the executive's deliberative processes—not to protect specific materials." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C. Cir. 1987).

have decided how (or whether) to answer any particular question. The records are, therefore, predecisional. They are also deliberative, because they entailed potential strategies and recommendations meant to further discussion. *Id.* ¶ 32. These dynamic records were amended to reflect real-time inputs, such as recent developments or competing points of view. *Id.* ¶ 33. And the records would serve as important tools for in-person briefings and preparatory sessions. *Id.* There is little doubt that they were created as part of the Department's deliberative process and, if disclosed, would reveal that process.

As such, the documents were properly withheld. "Courts in this jurisdiction have repeatedly concluded that talking points prepared for use in congressional testimony are deliberative and predecisional documents subject to FOIA exemption 5." *Husch Blackwell LLP v. U.S. Env't Prot. Agency*, 442 F. Supp. 3d 114, 123 (D.D.C. 2020) (quoting *Jud. Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018) (collecting cases)); *see also Comm. on Oversight & Gov't Reform, U.S. House of Reps. v. Lynch*, 156 F. Supp. 3d 101, 112 (D.D.C. 2016) ("Following the same reasoning [as previous decisions from this District], the Court holds that documents withheld by defendant that reveal the Department's internal deliberations about how to respond to press and Congressional inquiries . . . are protected by the deliberative process privilege."). With respect to the transcript excerpts, it is equally well established that even public facts, when "culled" or "selected" for inclusion within an agency record, can still be protected by the deliberative-process privilege. *See Am. C.L. Union v. Cent. Intel. Agency*, 105 F. Supp. 3d 35, 52 (D.D.C. 2015) (collecting cases).

Third, as required by FOIA, "the agency reasonably foresees that disclosure would harm an interest protected by" the deliberative-process privilege. 5 U.S.C. § 552(a)(8)(i)(I); Talebian Decl. ¶¶ 35–37. That privilege is meant to foster the fulsome and frank exchange of ideas within an agency. "It reflects the view that if agencies were 'to operate in a fishbowl, the frank exchange

13

of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'" *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 157 (D.C. Cir. 2023) (quoting *Dudman Commc'ns Corp.*, 815 F.2d at 1567 (cleaned up)). Here, knowing that deliberations about how the Attorney General should respond to questions from Congress about a sensitive subject (the investigation and prosecution of Hunter Biden) would be made public would obviously chill the openness with which government officials conduct those deliberations in the future. Talebian Decl. ¶ 35. *See Waterman*, 61 F.4th at 157 ("The 'ultimate purpose' of the deliberative process privilege is 'to prevent injury to the quality of agency decisions.'" (quoting *Nat. Lab. Rel. Bd.*, 421 U.S. at 151)).

The Department reasoned further that releasing these 82 pages might confuse the public. Talebian Decl. ¶ 36. Specifically, because the talking points were dynamic, releasing a snapshot of those talking points might convey outdated information about the Department's actual policy. *Id.* And because the final decision on how to answer a hypothetical answer is not made until the Attorney General gives that answer, releasing predecisional talking points might confuse the public about the Department's actual position. *Id.* Courts in this district have long recognized that public confusion is a harm that the deliberative-process privilege, encompassed by FOIA Exemption 5, is meant to prevent. *See Energy Policy Advocates v. Sec. & Exch. Comm'n*, -- F. Supp. 3d --, No. 1:22-cv-1497, 2023 WL 6976071, at *6 (D.D.C. Oct. 23, 2023) (citing *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1436 n.10 (D.C. Cir. 1992)).

Finally, the Department conducted a careful, line-by-line review of the 82 withheld pages to determine whether any information could reasonably be segregated for release. Talebian Decl. ¶ 38. It could not. With regard to the transcript excerpts, the selection of those excerpts *itself* reflects the thoughts and impressions of the employee(s) doing the selecting. *Id.*; *see also Am. C.L. Union*, 105 F. Supp. 3d at 52 (collecting cases). Accordingly, even revealing the material deemed

14

relevant to preparing the Attorney General would intrude on the Department's deliberative process. *Id.* Similarly, the talking points are "inherently deliberative in that they contain factual analyses, strategy-based decisionmaking, and proposed potential courses of action." Talebian Decl. ¶ 38. As such, no portions of them could be reasonably segregated for release. *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment on the adequacy of the agency's search and the propriety of all withholdings.

Dated:  June 28, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Jason C. Lynch*
JASON C. LYNCH (D.C. Bar No. 1016319)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendant*