**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HERITAGE FOUNDATION, *et al.*,<br><br>            Plaintiffs,<br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>            Defendant. | Case No. 24-cv-200-RBW |

**DEFENDANT'S COMBINED REPLY IN SUPPORT OF SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant the U.S. Department of Justice ("the Department") hereby files this combined

reply in support of its motion for summary judgment, ECF No. 23 ("Def. Mot."), and opposition

to Plaintiffs' cross motion for summary judgment, ECF No. 25 ("Pls. Mot.").

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.  THE DEPARTMENT REASONABLY INTERPRETED PLAINTIFFS' REQUEST. ............................ 2

II. THE DEPARTMENT CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO ITS
    REASONABLE INTERPRETATION. ................................................................................. 7

III. THE DEPARTMENT PROPERLY WITHHELD IN FULL THREE RECORDS (22 PAGES) OF
    TALKING POINTS UNDER FOIA EXEMPTION 5. .......................................................... 8

    A.  All Three Records are Predecisional. ............................................................. 9

    B.  The Department's Declaration and *Vaughn* Index Adequately Explain Why the
    Three Records are Deliberative. ................................................................ 11

    C.  The Department Identified a Foreseeable Harm Protected by Exemption 5. ...... 12

IV. THE DEPARTMENT CONDUCTED, AND ADEQUATELY EXPLAINED, A SEGREGABILITY
    ANALYSIS WITH RESPECT TO TWO RECORDS OF COMPILED TRANSCRIPT EXCERPTS. ...... 13

CONCLUSION .................................................................................................................. 14

**INTRODUCTION**

Plaintiffs submitted a Freedom of Information Act ("FOIA") request for all records "relied upon" by the Attorney General when he made 17 different statements at three congressional hearings and two press conferences. The Department reasonably responded to the request by searching for and processing records that were reasonably likely to have been made available to the Attorney General in preparation for those five public events. Specifically, the Department searched the offices with primary responsibility for preparing the Attorney General for congressional hearings and press conferences. The Department released 673 pages of records, either in whole or in part, and withheld 82 pages of records in full.

In its motion for summary judgment, accompanying declaration, and *Vaughn* index, the Department explained why its search was reasonable and why its withholdings were valid. Plaintiffs oppose on two primary grounds, neither of which persuades.

*First*, Plaintiffs argue that the Department unreasonably interpreted Plaintiffs' request and, therefore, failed to conduct an adequate search as a matter of law. In Plaintiffs' view, "relied upon" can only have one clear meaning. But in 10 pages of argument, straining to find that meaning in everything from "first principles" to this Court's local rules, Plaintiffs never say *what* "relied upon" means—only that the Department's interpretation is wrong. That omission is glaring. And indeed, Plaintiffs' own understanding of the term has evolved: they previously argued that the Department's search would be "manifestly deficient" if it did not include interviewing the Attorney General to ask what he relied on, but now say that no such interview is necessary (the Department agrees). Instead, Plaintiffs claim only to seek "the same relief sought in *PEER*" (Pl. Mem. 12), a case in which the court ordered an agency to search for and process records used to prepare an agency head for public appearances. But that is essentially what the Department did here, which only compounds the confusion over what, in Plaintiffs' view, their request called for. And if even

1

the authors of this "relied upon" request cannot define it, then they cannot seriously argue that the term is clear and unambiguous as a matter of law. Nor can they argue that the Department erred in conducting the very search that they now say was required. In all events, the Department's search was reasonable.

*Second*, Plaintiffs argue that the Department improperly withheld certain talking points prepared for consideration by the Attorney General in preparing for congressional hearings. Plaintiffs argue that once talking points become "final," they are no longer predecisional and cannot, therefore, be withheld under the deliberative-process privilege. But as the Department's declaration and *Vaughn* index explained, none of the withheld talking points was "final." And even if they were, Plaintiffs cite only one (unpublished) opinion holding that the final version of talking points cannot be withheld. That case stands opposed to the great weight of authority in this district—including from this Court—holding that talking points, even if not edited further in writing, remain predecisional so long as they precede the event for which they are prepared. For that and other reasons, the talking points were properly withheld here.

## ARGUMENT

### I.     THE DEPARTMENT REASONABLY INTERPRETED PLAINTIFFS' REQUEST.

Faced with a FOIA request that could be read as requiring the agency to do more than the law requires—specifically, to determine what, if any, underlying records an agency official may have had in mind when he made certain extemporaneous statements—the Department reasonably interpreted Plaintiffs' request to fit within FOIA's boundaries. *See generally* Def. Mot. 5–9. Plaintiffs say that was unreasonable, but their arguments fail to persuade.

Plaintiffs deny that the term "relied upon" is vague or ambiguous. But the lengthy string of case citations, ostensibly offered to prove that "[a]gencies routinely process 'relied upon' FOIA Requests," Pls. Mot. 7–8 & n.2, hardly proves Plaintiffs' point. Instead, all ten examples appear to

involve requests for records that *an agency* relied on when taking certain action.[1] That universe of records might objectively be determined—as in, to use Plaintiffs' example, a record-review case under the Administrative Procedure Act. *Id.* at 7–8 (citing APA cases). But none of Plaintiffs' examples is an apt comparator here, where the requestor sought to probe the thoughts of an individual official while he made certain unscripted verbal statements.

That is why Plaintiffs lean so heavily on *Public Employees for Environmental Responsibility v. United States Environmental Protection Agency*, 314 F. Supp. 3d 68 (D.D.C. 2018). *See* Pls. Mot. 12–15. That case is, apparently, the only example Plaintiffs can find of a request for records that an individual "relied upon" when making public remarks (in that case, during media appearances). But the Department has already explained why that case does not help Plaintiffs. *See* Def. Mot. 9. The court in *PEER* held that "relied upon" was not "inherently unknowable," but ultimately defined the term essentially as the Department did here: "agency records compiled, prepared, provided, used, or reviewed by [the speaker] in connection with his [statements]." 314 F. Supp. 3d at 77, 78.

Plaintiffs' own interpretation of "relied upon" has evolved during this very case, which further underscores the point. Plaintiffs now disclaim any need for the Department to interview Mr. Garland and ask what he "relied upon." *See* Pls. Mot. 12. But despite what Plaintiffs say, that is a new concession. They had previously insisted that the agency's search would be "manifestly deficient" if it did not include consulting Mr. Garland personally. *See* 6/10/2024 email from Pls. Counsel, attached previously as Exhibit 1 to Declaration of Max Taylor Matheu (June 12, 2024), ECF No. 19-1 at 2. So Plaintiffs must (now) have some conception of "relied upon" that falls short of Mr. Garland's subjective thoughts—which could only be ascertained through the interview that

---

[1] Plaintiffs other "relied upon" analogies—to Local Rule 7(h) and civil-discovery requests—are even further afield. *See* Pls. Mot. 8, 9. Needless to say, the scope of civil discovery is broader than FOIA, and thus requires parties in civil discovery to do more than FOIA does of federal agencies. *Cf.* Def. Mot. 5–6 (collecting cases).

they (now) say is unnecessary. Their turnabout on what is required to ascertain records "relied upon" by Mr. Garland is perhaps the best evidence that the term is ambiguous. Add to that the Delaware district court's recent observation in a similar FOIA case that "relied upon" asks the agency to "make a judgment call," *see* Ex. 1, Hr'g Tr. 4:13–17, *Heritage Found. v. U.S. Dep't of Just.*, No. 24-cv-53 (D. Del. July 17, 2024), and it is clear that the Department was entitled to interpret Plaintiffs' FOIA request reasonably.

In support of its argument that "relied upon" is susceptible to multiple understandings, the Department suggested that it could have read the term either more broadly or more narrowly than it did. *See* Def. Mot. 6–7. Plaintiffs try to assail both interpretations, but those "gotcha" arguments fall flat. The broadest interpretation offered by the Department would have included "the entirety of [the speaker's] knowledge," Def. Mot. 6. Plaintiffs say this "gives away the game," Pls. Mot. 7 n.1, insofar as FOIA only covers records, not knowledge. But the speaker's knowledge would include knowledge gained from agency records subject to FOIA. And thus, Plaintiffs' request could have been read to seek every "record" that the Attorney General had ever read, with any conceivable nexus to the relevant statement(s). That would have been unworkable, and even Plaintiffs—to the extent they proffer *any* meaning—do not suggest it.

Plaintiffs' response to the narrower construction of "relied upon," which would be limited to "those records that the Attorney General specifically mentioned or cited in his statements, or only those records that he had before him when he made his remarks," Def. Mot. 7, is similarly misguided. For some reason, Plaintiffs fear that the Department's interpretation, Def. Mot. 7 ("records prepared for use in preparing the Attorney General to speak at the five events"), would *exclude* "records in the Attorney General's hearing preparation binder that he (or someone acting

4

at his direction) placed into that binder." Pls. Mot. 11.[2] That is not a tenable reading of the Department's search declaration, but to avoid any doubt: the Department did not exclude any records merely because the Attorney General (or someone at his direction) prepared them—which should not be taken to suggest that any such records exist.

Plaintiffs argue briefly that even if "relied upon" were ambiguous, the Department is not permitted to adopt a "saving construction"—that is, to resolve ambiguity in favor of a permissible FOIA request. *See* Pls. Mot. 13–14. But they do not seriously attempt to distinguish *Leopold v. U.S. Department of Justice*, 301 F. Supp. 3d 13, 23–27 (D.D.C. 2018), which held exactly that. Nor do Plaintiffs offer any contrary authority. Whether Plaintiffs are "unsophisticated" (Pls. Mot. 13) is irrelevant, as is whether they "were fully prepared to litigate the validity of the Request" (*id.*). What matters is, first, that a "literal construction of th[e] request" would have been impermissible. *Leopold*, 301 F. Supp. 3d at 23. That is well established by the fact that "relied upon," on its face, would seem to require asking the speaker what he had in mind—which Plaintiffs (now) concede is not required by FOIA. It might also require the sort of research, opining, or question-answering that FOIA does not require. *See* Def. Mot. 5–6. And second, it matters that the Department's construction was reasonable given the context (statements made at public hearing and press conferences) and the Department's knowledge what records are used to prepare for such events and where those records would be located.

---

[2] Plaintiffs rely on a photograph of the Attorney General at the March 1, 2023 hearing with an open binder in front of him, to suggest that the Department may have overlooked records. *See* Pls. Mot. 11. But if the Court watches the video, available on the Senate Judiciary Committee's website at https://www.judiciary.senate.gov/committee-activity/hearings/02/22/2023/oversight-of-the-department-of-justice, it will see that Mr. Garland merely read his opening statement from that binder. At timestamp 33:59, he concluded his opening remarks and left the binder open to the last page of those remarks. Plaintiffs have offered no reason to think that he referred to any record in the binder when making the six relevant statements from that hearing, *see* Def. Statement of Undisputed Material Facts ¶¶ 1(g)–1(l), let alone a record that would not already have been netted by the Department's search.

Three final points are in order. First, the Department *did* offer an alternative to Plaintiffs' vague and ambiguous FOIA request. *Contra* Pls. Mot. 7. Specifically, the Department suggested that Plaintiffs could seek "specific records related to the comments of Attorney General Garland." *See* Decl. of Bobak Talebian Decl. ¶ 6 (June 28, 2024), ECF No .23-2 ("Talebian Decl.") & Ex. 2 (8/25/2023 letter from OIP to Plaintiffs), ECF No. 23-2 at 35. Plaintiffs never responded to that suggestion or otherwise continued the dialogue. Instead, five months later, they filed suit. Second, Plaintiffs did *not* learn of the Department's interpretation in its motion for summary judgment. *Contra* Pls. Mot. 7. The Department's final response, sent two months earlier, stated: "Please be advised that the searches conducted in OAG, OLA, and OPA consisted of a review of materials prepared by or for these offices for use in preparing the Attorney General for the hearings and public statements listed in your request." *See* Talebian Decl. Ex. 5, ECF No. 23-2 at 716. And third, contrary to their well-worn argument that the Department is playing games (Pls. Mot. 13), it is *Plaintiffs'* suggested course of action—that the Department should have denied the request and then litigated that denial—that would have delayed resolution of the matter. The Department's process yielded hundreds of responsive pages by the time that a pre-answer motion for summary judgment could likely have been litigated. That process accorded with FOIA's twin requirements that agencies construe requests liberally and provide records promptly. It was more than reasonable.

*     *     *

The great irony is that, despite all their arguments that "relied upon" can only have one meaning, Plaintiffs never say what that meaning is. They reject three proffered interpretations by the Department but never offer one of their own. The closest they come is to argue, essentially, that the Department should have done what it did. And while arguing at times that the Department's interpretation is "not the same thing" as the unambiguous meaning of "relied upon,"

6

Plaintiffs never say *what* the difference is, *how* the Department should have interpreted the request differently, or *what else* the Department should have searched for. Plaintiffs' inability (or unwillingness) thus far to define "relied upon" speaks volumes. The Department is entitled to summary judgment on its reasonable interpretation of, and response to, Plaintiff's FOIA request.

## II.    THE DEPARTMENT CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO ITS REASONABLE INTERPRETATION.

Plaintiffs acknowledge candidly that their adequacy-of-search argument depends entirely on winning their reasonableness-of-interpretation argument. *See* Pls. Mot. 15–16 ("Defendant's search fails as a matter of law for a simple reason; Defendant re-wrote the Request."). Accordingly, if the Court agrees that the Department reasonably interpreted Plaintiffs' FOIA request, *see supra* § I, it should proceed to uphold the agency's search.

Plaintiffs also argue that the search fails because the Department failed to "invoke the 'magic words,'" namely "that all locations likely to contain responsive records were searched." Pls. Mot. 18 (quoting *New Orleans Workers' Ctr. For Racial Just. v. U.S. Immigr. & Customs Enf't,* 373 F. Supp. 3d 16, 36–37 (D.D.C. 2019) and *Powell v. Internal Revenue Serv.*, 280 F. Supp. 3d, 155, 162 (D.D.C. 2017), respectively). But the Department's declaration concluded its search description as follows: "Based on my experience with the Department, my familiarity with the records maintained by senior leadership offices, and discussions with knowledgeable Department personnel, I have determined that OIP's searches in this case were reasonably calculated to uncover *all* potentially relevant preparation materials." Talebian Decl. ¶ 27 (emphasis added). That tracks the D.C. Circuit's requirement that "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Thus, in substance, the Department already offered "magic words," and the Court should

7

uphold the Department's declaration as written.

In another FOIA case brought by Plaintiffs involving records related to the Hunter Biden investigation, the court recently upheld the Department's search even though its declaration did not include the "magic words" that Plaintiffs now insist on. *See Heritage Found. v. Dep't of Just.*, No. 23-cv-1854-DLF, 2024 WL 3291783, at *10 (D.D.C. July 3, 2024) ("Given the Department has proved the reasonableness of its search, it is entitled to partial summary judgment."); Decl. of Kara Cain ¶ 42, *Heritage Found. v. U.S. Dep't of Just.*, No. 1:23-cv-1854-DLF (D.D.C. Nov. 22, 2023), ECF No. 33-2 ("Each step in the search and processing of Plaintiffs' request has been consistent with EOUSA's procedures, which were adopted to ensure an equitable response to all persons seeking responsive records under the FOIA/PA."). Tellingly, Plaintiffs did not object to the Department's phraseology in that case—calling into question whether they sincerely believe these words are "magic." *See generally* Pls. Mem. Opp'n to Def.'s Mot. for Partial Summ. J., *Heritage Found. v. U.S. Dep't of Just.*, No. 1:23-cv-1854-DLF (Dec. 13, 2023), ECF No. 34.

Nevertheless, to remove all doubt, the Department attaches a supplemental declaration re-phrasing its prior conclusion into the "magic words" that some district courts have required. *See* Ex. 2, 2d Decl. of Bobak Talebian ¶ 4 ("I aver that searches were conducted in all locations likely to contain potentially relevant materials, and that the searches conducted in this case were reasonably calculated to uncover all potentially relevant materials.").

### III. THE DEPARTMENT PROPERLY WITHHELD IN FULL THREE RECORDS (22 PAGES) OF TALKING POINTS UNDER FOIA EXEMPTION 5.

The Department withheld in full 14 records (82 pages) under FOIA Exemption 5, which encompasses the deliberative-process privilege. *See* Def. Mot. 12–15. Of those records, 12 were talking points prepared to assist the Attorney General at the three congressional hearings subject to Plaintiffs' FOIA requests. *See* Talebian Decl. ¶ 30. Plaintiffs do not dispute that these are "intra-agency memorandums" under 5 U.S.C. § 552(b)(5). *See* Pls. Mot. 19. Instead, Plaintiffs challenge

the withholding of three records (22 pages[3]) on the grounds that: (1) they are "final" and thus not predecisional; (2) the *Vaughn* index does not set forth "the who" of the records, such that the Court cannot tell whether the records are deliberative; (3) there is no foreseeable harm from releasing them.

As described in the Department's declaration, these talking points are not scripts but rather "reflect potential strategies and recommended talking points for use in addressing potential public statements and/or questions from members of Congress during a Congressional hearing." Talebian Decl. ¶ 32. Put another way, the materials reflect strategic insight into topics that *might* come up at a hearing, and strategic recommendations about points that *might* be appropriate to incorporate into extemporaneous responses if those topics arose.

### A.    All Three Records are Predecisional.

Plaintiffs argue that the three records are "final" talking points, and thus not predecisional. That argument fails for several reasons.

To begin, Plaintiffs merely speculate that the three records at issue are "final." True, the *Vaughn* index describes some talking points as older-in-time versions of others. For example, the record at pages 24-cv-200_48–53 "is an older-in-time draft version of the document beginning at 24-cv-200_42." *See Vaughn* Index 2 (June 28, 2023), ECF No. 23-3. But the *Vaughn* index does not describe pages 42–47—or indeed, any of the talking points—as "final." *See generally id.* To the contrary, the Department explained that "all talking points are subject to constant revision, discussion, and updating" and are thus inherently "drafts." Talebian Decl. ¶ 30 n.4. That is consistent with the process by which the Attorney General prepares for congressional testimony.

---

[3] *See* Pls. Mot. 20–21 ("Pages 42–47 [6 pages] appear to be a final version of both Pages 48–53 and Pages 54–58; Pages 12–24 [13 pages] appear to be a final version of Pages 25–39 and Pages 59–74; and 75–79 [5 pages] appear to be a final version of Pages 78–80 and pages 81–83."). Plaintiffs' motion contains a slight error: the last clause should read "Pages 75–77." Thus, in fact, there are only 22 pages at issue.

*See generally id.* ¶ 33. And it accords with the realities of testimony: the Attorney General does not reach a final decision on how to answer congressional questions on behalf of the Department until he hears the questions at the hearing itself. No staffer can make the decision in advance, even if that staffer "finalizes" a set of proposed talking points; those are still proposals (based on predictions) at most.

Nevertheless, relying on one passage from an unpublished decision, Plaintiffs argue that once talking points are settled, they become a final agency decision antecedent to the speaker's actual answer. *See* Pls. Mot. 19–20 (citing *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. 19-cv-980-BAH, 2021 WL 535725, at *20 (D.D.C. Feb. 13, 2021), *vacated in part on other grounds*, 541 F. Supp. 3d 34 (D.D.C. 2021).[4] Even if that case were on all fours, its reasoning is overwhelmed by the great weight of published authority. *See* Def. Mot. 13 (collecting cases); *see also 100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 72 (D.D.C. 2022); *Khatchadourian v. Def. Intel. Agency*, 597 F. Supp. 3d 96, 118 (D.D.C. 2022) (expressly rejecting Plaintiffs' "final talking points" argument); *Protect Democracy Project, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 569 F. Supp. 3d 25, 46–47 (D.D.C. 2021) ("An email [containing talking points] may become 'final'—as opposed to a 'draft'—when the author hits send. But that does not mean that the advice contained in the email becomes the final views of the agency[.]"); *Leopold v. Off. of Dir. of Nat'l Intel.*, 442 F. Supp. 3d 266, 276 (D.D.C. 2020) ("[T]he overwhelming consensus among judges in this District is that the [deliberative process] privilege protects agency deliberations about public statements, including the use of talking points.") (quoting *Am. Ctr. for Law & Just. v. U.S. Dep't*

---

[4] Here again, Plaintiffs must speculate. They divine from the fact "that the Attorney General's remarks were internally consistent" that they "*may well* reflect a final prior decision." Pls. Mot. 20 (emphasis added). But Plaintiffs have no basis for concluding that a final decision was reached. Plaintiffs also conflate the relevant decisions: even if the Attorney General had decided to give Mr. Weiss authority to bring charges outside of Delaware, the relevant decision was how to answer questions at the three relevant hearings. Plaintiffs have even less basis to speculate that *that* decision had been made.

10

*of Just.*, 325 F. Supp. 3d 162, 171–72 (D.D.C. 2018) and citing *Jud. Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018); *Comm. on Oversight & Gov't Reform, U.S. House of Reps. v. Lynch*, 156 F. Supp. 3d 101, 111–12 (D.D.C. 2016); *Jud. Watch v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010); *Competitive Enter. Inst. v. Env. Prot. Agency*, 12 F. Supp. 3d 100, 119–20 (D.D.C. 2014)). This Court, too, has reasoned that so long as talking points precede the public statement, they "remain ripe recommendations that are ready for adoption or rejection by the Department." *Am. C.L. Union v. U.S. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 112 (D.D.C. 2010) (Walton, J.). That is the case here, and the records were properly deemed predecisional.

**B.      The Department's Declaration and *Vaughn* Index Adequately Explain Why the Three Records are Deliberative.**

Plaintiffs argue that the Department's *Vaughn* index is silent "as to the 'who' of the talking points." Pls. Mot. 21. (citing *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 56 (D.C. Cir. 2021)). They argue the index is inadequate as a matter of law because it does not explicitly state the "roles of the department drafters and recipients and their places in the chain of command." *Id.* But that is not the case, nor is Plaintiffs' reading of the caselaw fair. *Judicial Watch* does not demand that an agency identify, either by name or specific position, the participants in an agency's deliberation. Instead, to ensure the requester and the court have enough information to establish the predecisional and deliberative elements of the privilege, the Court of Appeals highlighted cases where the agency's submissions allowed the court to identify: "the 'who,'" *i.e.*, the roles of the document drafters and recipients and their places in the chain of command; the 'what,' *i.e.*, the nature of the withheld content; the 'where,' *i.e.*, the stage within the broader deliberative process in which the withheld material operates; and the 'how,' *i.e.*, the way in which the withheld material facilitated agency deliberation." *Jud. Watch*, 20 F.4th at 56. That is what the Department has provided here. The Department described how the materials were prepared for the Attorney

11

General by offices responsible for preparing him for congressional hearings, OLA and OAG, why that process is a deliberative one, and how the materials fit within that process.

Greater precision about the "who" is neither required by law nor material to the determination of whether the material is deliberative in this case. Whether the talking points were prepared by "a low-level employee" (Pls. Mot. 21), or "Assistant Attorney General Carlos Felipe Uriarte" (*id.*), or some collaborative combination of staff, the point is that these recommendations were being made *up* the chain of command to the Attorney General. Because the "who" inquiry is merely meant to ensure that the documents are truly deliberative—as opposed to being dictated by a superior—no more detail is needed here.

### C.    The Department Identified a Foreseeable Harm Protected by Exemption 5.

Plaintiffs dispute that releasing what they call "final" (more precisely, later-in-time) talking points would cause foreseeable harm to an interest protected by FOIA Exemption 5. Pls. Mot. 21–22. Specifically, they argue that the public cannot be confused by "finalized" talking points, whose value is "in learning what the agency chose to share with the public." *Id.* at 22. Here again, Plaintiffs fail to appreciate that the agency does not ultimately choose what to share with the public—in this case, at three congressional hearings—until the Attorney General answers questions at those hearings. Accordingly, anyone who wants to "learn[] what the agency chose to share with the public" (*id.*) need only watch the hearing or read its transcript. And precisely because his answers might deviate from the talking points (even the ultimate version of those talking points) any difference between the two could confuse the public. *See* Def. Mot. 14.

But the Court need not address the confusion point, because Plaintiffs concede *sub silentio* the Department's primary argument about foreseeable harm: that foreknowledge of staff recommendations' becoming public would chill frank deliberation within the agency. *See id.* at 13–14 (citing *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 157 (D.C. Cir. 2023)). That is

the quintessential interest protected by the deliberative-process privilege, and Plaintiffs do not dispute that it would be harmed here. *Cf.* Pls. Mot. 21–22 (silent on the subject).

**IV.    THE DEPARTMENT CONDUCTED, AND ADEQUATELY EXPLAINED, A SEGREGABILITY ANALYSIS WITH RESPECT TO TWO RECORDS OF COMPILED TRANSCRIPT EXCERPTS.**

An agency is required by FOIA to "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II). In this case, the Department reviewed every line of the 82 withheld-in-full pages to determine whether any information could be segregated and released. *See* Def. Mot. 14–15; Talebian Decl. ¶ 38. Plaintiffs question the segregability of two records, numbered 24-cv-200_1–4 on the Department's *Vaughn* index.[5] Plaintiffs argue that "it is unexplained why the OAG's release of two pages of curated and highlighted transcript excerpts (Cornett Decl. Exhibit 2) did the agency no harm, but the release of the any additional transcript excerpts would." *Id.*

Putting aside that there is no "Cornett Decl. Exhibit 2," *see* Decl. of Eric Neal Cornett (July 29, 2024), ECF No. 25-2, Plaintiffs presumably refer to the two pages released by the Department in its final response. *See* Talebian Decl. Ex. 5, ECF No. 23-2 at 716, 719–20. But while that record is an actual transcript, the Department's *Vaughn* index clearly describes the withheld-in-full records as "compilation[s] of preparatory materials which *consists of* selected quotes from Congressional hearing transcripts." *Vaughn* Index, ECF No. 23-3 at 1 (emphasis added). Thus, unlike the released Bloomberg transcript, the withheld records were created within the Department by authors whose thought process would be revealed if the records—or any portion of them—were revealed to the public. *See* Def. Mot. 14 (citing Talebian Decl. ¶ 38; *Am. C.L. Union v. Cent. Intel. Agency*, 105 F. Supp. 3d 35, 52 (D.D.C. 2015) (collecting cases)). That distinction adequately addresses Plaintiffs' concern.

---

[5] As the *Vaughn* index explains, pages 3–4 compose a substantively identical record as pages 1–2. Thus, there is essentially one record at issue.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment and deny Plaintiffs' cross motion for summary judgment.

Dated:  August 9, 2024                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          ELIZABETH J. SHAPIRO
                                          Deputy Branch Director

                                          /s/ *Jason C. Lynch*
                                          JASON C. LYNCH (D.C. Bar No. 1016319)
                                          Trial Attorney
                                          Federal Programs Branch
                                          U.S. Department of Justice, Civil Division
                                          1100 L Street, NW
                                          Washington, DC 20005
                                          Telephone: (202) 514-1359
                                          Email: Jason.Lynch@usdoj.gov

                                          *Counsel for Defendant*

14