**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HERITAGE FOUNDATION, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 24-200 (RBW) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

The plaintiff, the Heritage Foundation, which is led by plaintiff Mike Howell, is a "nonpartisan public policy organization . . . whose mission is to formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense." <u>See</u> Complaint and Prayer for Declaratory and Injunctive Relief ("Compl.") ¶ 4, ECF No. 1.  The plaintiffs bring this civil action against the defendant, the United States Department of Justice (the "DOJ"), pursuant to the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, arising out of their FOIA request seeking, <u>inter alia</u>, records "that Attorney General Merrick B. Garland relied upon in making statements to Congress and the media regarding the authority of [United States] Attorney David Weiss ('Weiss') over the ongoing investigation into Robert Hunter Biden," <u>see</u> Compl. ¶ 1.  The plaintiffs allege in their Complaint that the former "Attorney General's statements about Weiss's authority have been contradicted by Weiss himself and multiple criminal investigators from the Internal Revenue Service."  <u>Id.</u> ¶ 2.

Currently pending before the Court are the parties' cross-motions for summary judgment. <u>See generally</u> Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 23;

Plaintiffs' Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Pls.' Mot."), ECF No. 25. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny without prejudice in part the defendant's motion, and hold in abeyance in part and deny in part the plaintiffs' cross-motion.

## I.    BACKGROUND

### A.    The Plaintiffs' FOIA Request

On August 15, 2023, the plaintiffs submitted a FOIA request seeking "[a]ll records relied upon by Attorney General Merrick B. Garland in the following public statements:"

    a. "So, I am not going to comment about this investigation, but as everyone knows there is an investigation going on in Delaware by the U.S. Attorney who was appointed by the previous Administration. I can't comment on it any further than that."[2]

    b. "So the Hunter Biden investigation, as I said even in my own nomination confirmation hearing, is being run by and supervised by the United States Attorney for the District of Delaware."[3]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum of Law In Support of its Motion for Summary Judgment ("Def.'s Mem."), ECF No. 23; (2) the Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"), ECF No. 23-1; (3) the Declaration of Bobak Talebian ("Talebian Decl."), ECF No. 23-2; (4) Def.'s Mem., Exhibit ("Ex.") 1 to the Talebian Decl. ("Pls.' FOIA Request"), ECF No. 23-2; (5) the Def.'s Mem., Ex. 2 to the Talebian Decl. ("Aug. 25, 2023 Response"), ECF No. 23-2; (6) the Def.'s Mem., Ex. 3 to the Talebian Decl. ("2024 Email Exchange"), ECF No. 23-2; (7) the Def.'s Mem., Ex. 4 to the Talebian Decl. ("Def.'s First Response Letter"), ECF No. 23-2; (8) the Def.'s Mem., Ex. 5 to the Talebian Decl. ("Def.'s Second Response Letter"), ECF No. 23-2; (9) the Office of Information Policy ("OIP") Vaughn Index ("Vaughn index"), ECF No. 23-3; (10) the Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts ("Pls.' Facts"), ECF No. 25-2; (11) the Declaration of Eric Neal Cornett ("Cornett Decl."), ECF No. 23-2; (12) Ex. 1 to the Cornett Decl. ("Parties' Email Exchange"), ECF No. 23-3; (13) the Defendant's Combined Reply In Support Of Summary Judgment And Opposition To Plaintiffs' Cross Motion For Summary Judgment ("Def.'s Reply"), ECF No. 26; (14) the Defendant's Response To Plaintiffs' Statement Of Undisputed Material Facts, ECF No. 30; and (15) the Plaintiffs' Reply In Support Of Plaintiffs' Cross Motion For Summary Judgment ("Pls.' Reply"), ECF No. 29. The Court notes that the Parties' Email Exchange submitted by the plaintiffs is partially visually obstructed on the right side and certain words in this exhibit are not visible to the Court.

[2] This statement "was made at an October 21, 2021 hearing of the House Oversight Committee." Def.'s Facts ¶ 2.

[3] The statement in this paragraph through paragraphs 1(f) "were made at an April 26, 2022 hearing of the Senate Judiciary Committee." Def.'s Facts ¶ 3.

c.  "He [U.S. Attorney Weiss] is supervising the investigation. And I'm, you know, I'm not at liberty to talk about internal Justice Department deliberations, but he is in charge of that investigation. There will not be interference of any political or improper kind."

d.  "Again, he [U.S. Attorney Weiss] is the supervisor of this investigation and, you know, the normal processes of the department occur. But he is the supervisor of this investigation."

e.  "Because we put the investigation in the hands of a Trump appointee from the previous Administration who's the United States Attorney for the District of Delaware. And because you have me as the Attorney General, who is committed to the independence of the Justice Department from any influence from the White House in criminal matters."

f.  "Senator, following the longstanding rule of the Justice Department we don't discuss investigations or evidence that maybe—may or may not be relevant to investigations[.] That's a matter for the United States Attorney's office that's investigating the case."

g.  "So, as the committee well knows from my confirmation hearing, I promise to leave—I promised to leave the matter of Hunter Biden in the hands of the U[.]S[.] attorney for the District of Delaware, who was appointed in the previous administration. So, any information like that should have gone or should— or should have gone to that U[.]S[.] attorney's offices and the FBI squad that's working with him. I have pledged not to interfere with that investigation, and I have carried through on my pledge."[4]

h.  "The—the U[.]S[.] attorney in Delaware has been advised that he has full authority to—to make those kind of referrals that you're talking about, or to bring cases in other jurisdictions if he feels it's necessary. And I will assure that, if he does, he will be able to do that."

i.  "He [U.S. Attorney Weiss] would have to bring—if it's in another district, he would have to bring the case in another district. But as I said, I promise to ensure that he's able to carry out his investigation and that he be able to run it. And if he needs to bring it in another jurisdiction, he will have full authority to do that."

j.  "Well, it's a kind of a complicated question. If it—under the regulations, that kind of act, he [U.S. Attorney Weiss] would have to bring to me under—to the Attorney General. Under the regulations, those kind of charging decisions

---

[4] The statement in this paragraph through paragraphs 1(l) "were made at a March 1, 2023 hearing of the Senate Judiciary Committee." Def.'s Facts ¶ 4.

would have to be brought. I would then have to, you know, authorize it and permit it to be brought in another jurisdiction. And that is exactly what I promised to do here already, that if he needs to do— bring a case in another jurisdiction, he will have my full authority to do that."

k. "So, I—I don't know the answer to that. I do—and I don't want to get into the internal elements of decision making by the U[.]S[.] attorney. But he [U.S. Attorney Weiss] has been advised that he is not to be denied anything that he needs. And if that were to happen, it should ascend through the department's ranks. And I have not heard anything from that office to suggest that they're not able to do everything that the U[.]S[.] attorney wants to do."

l. "I can't comment about the investigation, other than to say that all the matters involving Mr. Hunter Biden are the purview of the U[.]S[.] attorney in Delaware. He's not restricted in his investigation in any way."

m. "Yes, it's still the case that I stand by my testimony, and I refer you to the U.S. attorney for the District of Delaware who is in charge of this case and capable of making any decisions that he feels are appropriate."[5]

n. "As I said at the outset, Mr. Weiss, who was appointed by President Trump as the US attorney in Delaware and assigned this matter during the previous administration would be permitted to continue his investigation and to make a decision to prosecute anyway in which he wanted to and in any district in which he wanted to. Mr. Weiss has since sent a letter to the House Judiciary Committee confirming that he had that authority. I don't know how it would be possible for anybody to block him from bringing a prosecution, given that he has this authority."[6]

o. "I say, [U.S. Attorney Weiss] was given complete authority to make all decisions on his own."

p. "The only person with authority to make somebody a special counsel or refuse to make somebody a special counsel is the attorney general. Mr. Weiss never made that request to me."

q. "Mr. Weiss had in fact more authority than a special counsel would have had. He had and has complete authority, as I said, to bring a case anywhere he wants in his discretion."

---

[5] The statement in this paragraph "was made at a May 2, 2023 press conference announcing the results of an interdiction against fentanyl trafficking." Def.'s Facts ¶ 5.

[6] The statement in this paragraph through paragraphs 1(q) "were made at a June 23, 2023 press conference announcing charges against a Chinese chemical company." Def.'s Facts ¶ 6.

Def.'s Facts ¶ 1; Pls.' FOIA Request.

On August 25, 2023, the defendant denied the plaintiffs' FOIA request because the plaintiffs' "request was not reasonably described and, as such, [the defendant] would not be able to fulfil the[] request." Def.'s Facts ¶ 7; Talebian Decl. ¶ 6; Pls.' Facts ¶ 7. The plaintiffs filed an administrative appeal of that decision on August 28, 2023, Compl. ¶ 19, and filed the instant lawsuit in this Court on January 23, 2024, see generally Compl.

Subsequently, the defendant "decided to offer the request its most reasonable interpretation[,]" according to the defendant, and conduct a search "for records reasonably likely to have been made available to the Attorney General in preparation for the Congressional hearings and public statements." Talebian Decl. ¶ 7; Def.'s Facts ¶ 8. The defendant did not consult the plaintiffs in interpreting their FOIA request. See Pls.' Mem. at 3.

The defendant "determined that the three offices most likely to have responsive records were the Office of Legislative Affairs ('OLA'),[7] the Office of Public Affairs ('OPA'),[8] and the Office of the Attorney General ('OAG')."[9] Def.'s Facts ¶ 9. Additionally, the defendant determined that conducting a search of "email records would be fruitless" because Attorney General Garland relied on paper materials, not electronic materials. Id. ¶ 10. And, "even if there were email communications referencing topics comparable to the topics in" the plaintiffs' FOIA "request, those communications would not have been reasonably likely to have been made

---

[7] The OLA is "responsible for the development and implementation of strategies to advance the Department's legislative initiatives and other interests relating to Congress, which includes preparing the Attorney General for Congressional testimony." Def.'s Facts ¶ 11.

[8] The OPA "is the principal point of contact for the [defendant] with the news media and is the . . . office responsible for preparing the Attorney General for press conferences and other public statements." Def.'s Facts ¶ 22.

[9] In preparing "the Attorney General for Congressional hearings, press conferences, and other public statements," the OAG "typically utilizes the materials prepared and provided by other components supporting the relevant event—e.g., [the] OLA for congressional testimony or [the] OPA for press conferences." Def.'s Facts ¶ 27. The "OAG may also provide additional preparation materials as appropriate." Id.

available to [ ] Attorney General [Garland] . . . in preparing for the congressional hearings or press conferences cited in [the p]laintiffs' request." Id.

In regards to the OLA's search for documents responsive to the plaintiffs' FOIA request, it "isolated and" "manually reviewed" "preparation materials reasonably likely to have been made available to [ ] Attorney General [Garland] for the three Congressional hearings cited in [the p]laintiffs' FOIA request." Id. ¶¶ 13–16. The defendant then "determined that 753 pages of hearing-preparation materials" the OLA identified contained "references to topics comparable to those discussed in the specific statements cited in" the plaintiffs' FOIA request. Id. ¶¶ 17–18. The defendant then released 193 pages to the plaintiffs in full, 478 pages in part,[10] and withheld 82 pages in full pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5). Def.'s Facts ¶¶ 19–20, 32; see Pls.' Facts ¶¶ 19, 32 (admitting "that 671 pages were released by" the defendant). The defendant asserts that it withheld 82 pages in full "pursuant to the deliberative process privilege." Id. ¶ 34. These 82 pages consist of (1) "[f]our pages of selected transcript excerpts from prior Congressional hearings, curated for the purpose of hearing preparation" and (2) seventy-eight "pages of talking points and draft talking points on a wide variety of topics." Id.

As to the OPA's search for records, the defendant asserts that the OPA "does not typically provide written preparation materials to the Attorney General for use in answering questions from members of the media on unrelated topics." Id. ¶ 23. Instead, it prepares the Attorney General orally. Id. To determine if the OPA had documents responsive to the plaintiffs' FOIA request, it "verified with knowledgeable" officials at the defendant's office whether "written preparation materials were made available for the Attorney General's use . . . on unrelated topics from the media at the press conferences [cited in [the p]laintiffs'

---

[10] The defendant withheld these pages, in part, pursuant to FOIA Exemption 6. Def.'s Facts ¶ 32; see 5 U.S.C. § 552(b)(6). The plaintiffs do not challenge this partial withholding. See Def.'s Facts ¶ 32; Pls.' Facts ¶ 32.

6

FOIA request."  Id. ¶¶ 24–25.  The defendant determined "that no such records [ ] likely [ ] exist. . . ."  Id. ¶ 26.

Additionally, the OAG's search of records "yielded several sets of material associated with the relevant Congressional hearings, [but] did not yield any records associated with the relevant public statements cited in [the p]laintiffs' FOIA request."  Id. ¶ 29.  The defendant identified and provided the plaintiffs with "two pages of preparation materials" which "were reasonably likely to have been made available to the Attorney General[] and [ ] contained topics comparable to those discussed in the specific statements cited in [the p]laintiffs' FOIA request."  Id. ¶¶ 30–31; see Pls.' Facts ¶ 33.

**B.    Procedural History**

On January 23, 2024, the plaintiffs filed their Complaint against the defendant, see generally Complaint, and the defendant filed its answer on February 26, 2024, see generally Answer, ECF No. 10.  On June 28, 2024, the defendant filed its motion for summary judgment, see generally Def.'s Mot., and on July 29, 2024, the plaintiffs filed their cross-motion for summary judgment and opposition to the defendant's motion for summary judgment, see generally Pls.' Mot.  Briefing related to each parties' motion for summary judgment has now been completed, and their motions are ripe for the Court's adjudication.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he vast majority of FOIA cases can be resolved on summary judgment. . . ."  Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).  The "FOIA requires federal agencies to

disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly.").

The defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted), and the district court must "determine the matter de novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"). The defendant's burden "cannot be met by mere conclusory statements." Wash. Post Co., 863 F.2d at 101 (citation omitted). Instead, "[t]he agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed," King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the [FOIA] seeks to guard against," Wash. Post Co., 863 F.2d at 101 (citation omitted).

Courts will grant summary judgment to the defendant in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is

entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Additionally, in 2016, Congress amended the FOIA to add a "foreseeable harm" requirement, which allows withholding of information "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or the "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "Stated differently, . . . an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest" and if the law does not prohibit the disclosure. Jud. Watch, Inc. v. U.S. Dep't of Com., 375 F. Supp. 3d 93, 98 (D.D.C. 2019) (quoting Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 73 (D.D.C. 2018)).

### III.    ANALYSIS

The parties ask the Court to decide three issues in this case:  (1) whether the defendant reasonably interpreted the plaintiffs' FOIA request, (2) whether the defendant's search of records was adequate, and (3) whether the defendant properly withheld certain records pursuant to FOIA Exemption 5.  The Court will address each issue in turn.

### A.    Whether the Defendant Reasonably Interpreted the Plaintiffs' FOIA Request

If the records requested are not exempt, the FOIA commands that federal agencies make "promptly available to any person" records sought pursuant to a FOIA request "which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed. . . ." 5 U.S.C. § 552(a)(3)(A) (emphasis added).  "The D.C. Circuit has long cautioned that federal agencies may not use the 'reasonably

9

describes' requirement to deny the public access to responsive records[.]"  See Bristol–Myers Co. v. Fed. Trade Comm'n, 424 F.2d 935, 938 (D.C. Cir. 1970).  Instead, federal agencies must "construe a FOIA request liberally."  People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Human Servs., 745 F.3d 535, 540 (D.C. Cir. 2014).  "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'"  Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 610 (D.C. Cir. 1997).

As discussed above, the plaintiffs' FOIA request sought "all records relied upon by [Former] Attorney General Merrick B. Garland in the" 17 public statements delineated above. See Def.'s Facts ¶ 1; Pls.' FOIA Request.  According to the defendant, the former Attorney General did not actually reference any documents when making each of these statements, and so the defendant contends that it is entitled to summary judgment, inter alia, because it "reasonabl[y] interpret[ed] the plaintiffs' "inherently vague and ambiguous" FOIA request.  See Def.'s Mem. at 6–7.  The plaintiffs respond that their FOIA request "is not vague or ambiguous[,]" but even if it is, the defendant "should have conferred with [the p]laintiffs to determine exactly what [the p]laintiffs sought."  Pls.' Mem. at 6–7 (internal quotations omitted). The plaintiffs also argue that "there is nothing reasonable about [the d]efendant's interpretation of the [plaintiffs' FOIA r]equest," and that the defendant essentially rewrote the plaintiffs' request.  Id. at 9.

The Court agrees with the defendant that the plaintiffs' FOIA request as drafted did not "reasonably describe[] records."  See 5 U.S.C. § 552(a)(3)(A).  As the defendant notes, the 17 statements made by former Attorney General Garland in the plaintiffs' FOIA request are broad, general, extemporaneous, oral statements about the investigation into Hunter Biden that former U.S. Attorney Weiss was conducting.  Def.'s Mem. at 6–7.  The statements noted, inter alia, that:

10

(1) there was an investigation into Hunter Biden, (2) the then-United States Attorney for the District of Delaware was in charge of the investigation, (3) former Attorney General Garland could not comment on the then-active investigation, (4) the FBI was assisting the United States Attorney for the District of Delaware in its investigation, (5) former U.S. Attorney Weiss had been advised that he had full authority to make referrals or bring cases in other jurisdictions related to the investigation into Hunter Biden, (6) the attorney general would have to approve of cases brought by former U.S. Attorney Weiss in other jurisdictions pursuant to the defendant's regulations, (7) the Attorney General had the sole authority to "make somebody a special counsel or refuse to make somebody a special counsel" and former U.S. Attorney Weiss "never made that request[,]" (8) and that former U.S. Attorney Weiss "had in fact more authority than a special counsel." See Pls.' FOIA Request 1–4. It appears that only one of the statements included in the plaintiffs' FOIA request actually referenced records, that being former Attorney General Garland's statement that "Mr. Weiss ha[d] since sent a letter to the House Judiciary Committee confirming that he had [ ] authority" to "continue his investigation [into Hunter Biden] and to make a decision to prosecute anyway in which he wanted to and in any district in which he wanted to." Id. at 3–4.

The Court finds that the above-described statements, except for the statement referencing the letter to the House Judiciary Committee, are merely broad assertions stating information that is general in nature about then-U.S. Attorney Weiss and former Attorney General Garland's broad authority and policies of the DOJ. As the defendant notes, "[a]s the [former] Attorney General of the United States, Mr. Garland would hardly need to consult a particular record to know that a U.S. Attorney supervises investigations being conducted by his office" or the defendant's "longstanding rule" that "the Justice Department" does not "discuss investigations or

11

evidence that . . . may or may not be relevant to investigations." Def.'s Mem. at 6. Therefore, the Court agrees that the majority of the plaintiffs' FOIA request, with the exception of one statement, does not describe records at all, let alone "reasonably describe" records. See 5 U.S.C. § 552(a)(3)(A).[11]

Despite not being able to determine what records the plaintiffs sought, but "in the spirit of cooperation, the [defendant] decided to offer the request its most reasonable interpretation, which allowed a search to be conducted." Talebian Decl. ¶ 7. The defendant thus conducted a search "for records reasonably likely to have been made available to the Attorney General in preparation for the Congressional hearings and public statements cited in [the p]laintiffs' FOIA request." Id.; id. ¶ 12 (attesting that the defendant construed the plaintiffs' FOIA request "as seeking documents prepared and retained by the OLA, the OPA, or the OAG for use in preparing the [former] Attorney General for Congressional hearings and public statements cited in [the p]laintiffs' FOIA request, and that were reasonably likely to be made available to the [former] Attorney General for his preparation"). The plaintiffs take issue with this position, arguing that the defendant "should have conferred with [the p]laintiffs to determine exactly what [the p]laintiffs sought." Pls.' Mem. at 7. But, the plaintiffs are seeking more than what the FOIA

---

[11] The plaintiffs' argument that the defendant should have reasonably understood its request because other FOIA requesters in other FOIA cases use the term "relied upon" in drafting their requests is unavailing. See Pls.' Mem. at 7–9 & n.2. The term "relied upon" is not a magical phrase that will turn an otherwise ambiguous and vague FOIA request into a FOIA request that reasonably describes records sought. Instead, as provided in the cases that the plaintiffs cite, the determination as to whether the request reasonably describes the records being sought is context specific and depends on the language in the request as a whole. See, e.g., NYC Apparel FZE v. U.S. Customs and Border Protection, No. 04-cv-2105 (RBW), 2006 WL 167833, *5 (D.D.C. Jan. 23, 2006) (Walton, J.) (describing a FOIA request which sought "all information relied upon by Customs for the seizure [of its containers, including] manuals, guidelines, directives, etc. [as well as] all records and/or information that proves [the] alleged violations in this case") (alterations in original); Cleveland v. United States, 128 F. Supp. 3d 284, 289 (D.D.C. 2015) (Walton, J.) (describing a FOIA request in which a "plaintiff sought information regarding who wrote the report, and what sources of information they relied upon to write it. . . . "); see also Def.'s Reply at 2–3 (arguing that some of the cases that the plaintiffs have cited in their motion which discuss FOIA requests that include "relied upon" language involve facts that are dissimilar to this case).

requires. For the following reasons, the Court finds that the defendant complied with its duties under the applicable regulations.

28 C.F.R. § 16.3(b) states that "[i]f after receiving a request a component determines that it does not reasonably describe the records sought, the component shall inform the requester what additional information is needed or why the request is otherwise insufficient." Here, after receiving the plaintiffs' FOIA request, the defendant sent the plaintiffs a letter on August 25, 2023, which explained that the plaintiffs' "request is not reasonably described in a way that will allow agency personnel to conduct an appropriate records search in that it would require Department personnel to conduct research, analysis, and formulation of opinions in order to determine which records were 'relied upon' by [former] Attorney General Garland." Aug. 25, 2023 Response at 1. Therefore, the Court finds that the defendant's August 25, 2023, letter satisfied the defendant's obligations as required by this part of 28 C.F.R. § 16.3(b). Further, the defendant invited the plaintiffs to "submit [ ] a request to" its office if the plaintiffs sought "specific records related to the comments of [former] Attorney General Garland" and to "contact [its] FOIA Public Liaison . . . for any further assistance and to discuss any aspect of [the plaintiffs'] request." Aug. 25, 2023 Response at 1. Accordingly, the Court also finds that the defendant notified the plaintiffs of their option to "discuss [their] request with the [defendant]'s designated . . . FOIA Public Liaison, . . . who[] is available to assist the [plaintiffs] in reasonably describing the records sought" as further provided in 28 C.F.R. § 16.3(b). For these reasons, the Court will not impose an additional duty on the defendant "to confer with a requester before construing an otherwise fatally overbroad request in a manner to which a response may be provided[.]" Leopold v. Dep't of Just., 301 F. Supp. 3d 13, 25 (D.D.C. 2018).

The plaintiffs also contend that instead of applying the "reasonable" or "most reasonable" "interpretation of the [plaintiffs' FOIA r]equest, the defendant "has rewritten it." Pls.' Mem. at 9. The defendant argues that it "applied a reasonable interpretation that allowed it to conduct a search" and that "interpretation was reasonable, in part, because the 17 statements at issue were extemporaneous and offered in response to questions posed in real time." Def.'s Mem. at 7. The defendant further contends that it "could have adopted [an] even narrower construction[] of [the p]laintiffs' request[,]" such as encompassing "only those records that the [former] Attorney General specifically mentioned or cited in his statements, or only those records that he had before him when he made his remarks[,]" but the defendant chose to adopt a broader construction of the plaintiffs' FOIA request. Id.; Def.'s Reply at 4.

The Court agrees with the defendant that its interpretation of the plaintiffs' FOIA request was reasonable. Because the plaintiffs' FOIA request as drafted was unreasonably vague, and therefore did not "enable a professional employee of the [defendant] who was familiar with the subject area of the request to locate the record with a reasonable amount of effort," H.R. Rep. No. 93–876 93d Cong., 2d Sess., at 6 (1974), as reprinted in 1974 U.S.C.C.A.N. 6267, 6271, the defendant "construe[d the plaintiffs'] FOIA request liberally," People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Human Servs., 745 F.3d 535, 540 (D.C. Cir. 2014). See Leopold, 301 F. Supp. 3d at 25 (explaining that "while the law is clear that FOIA requests must be liberally construed, this obligation is limited by the agency's ability to identify the locations where the requested records may be located and the concomitant administrative burdens of conducting the search with available search tools"); Def.'s Reply at 5 (explaining that the defendant applied its "knowledge [of] what records are used to prepare for such events and where those records would be located" in searching for records in this case).

14

Moreover, the plaintiffs have not lodged a plausible reason as to why the defendant's interpretation of the plaintiffs' FOIA request was improper.[12] See Def.'s Reply at 6–7. To the contrary, the plaintiffs seem to lodge more narrow constructions of their FOIA request that they believe the defendant should have used, such as using the phrases "records compiled by," "records prepared by," and "records used by" former Attorney General Garland. See Pls.' Reply at 3, 9–10. But those constructions would be more narrow than the construction the defendant applied, which was for "records reasonably likely to have been made available to the Attorney General in preparation for the Congressional hearings and public statements cited in [the p]laintiffs' FOIA request." Talebian Decl. ¶ 7. And that construction seems to encompass records that would at least be prepared by and used by the former Attorney General.

Further, the defendant's interpretation of the plaintiffs' FOIA request did not deviate from the subject matter or the events during which the former Attorney General made each of the 17 statements. See e.g., Am. Oversight v. Off. of Mgmt. and Budget, 613 F. Supp. 3d 219, 228 (D.D.C. 2020) (finding that the agency's search for records "was inadequate because it imposed a subject matter limitation that was not present in" the requester's FOIA request); Utahamerican Energy, Inc. v. Mine Safety and Health Admin, 725 F. Supp. 2d 78, 82 (D.D.C. 2010) (finding that the agency's search "contained subject matter and time restrictions that were absent in" the plaintiff's "FOIA request"). And, the plaintiffs agree—as they must—that the defendant was not

---

[12] The plaintiffs include a picture of former Attorney General Garland at a March 1, 2023, Senate Judiciary Committee Oversight Hearing in which the former Attorney General is depicted sitting with his hands folded over an open binder with papers in it. See Pls.' Mem. at 11 & n.3. The plaintiffs contend that "[i]t appears from the Talebian Declaration that [the d]efendant did not search for (and thus viewed as non-responsive) these binders." Id. at 12. The defendant responds to the plaintiffs' concern by assuring the Court and the plaintiffs that it "did not exclude any records merely because the Attorney General (or someone at his direction) prepared them—which should not be taken to suggest that any such records exist." Def.'s Reply at 5. Additionally, the defendant explains that former Attorney General Garland relied on the papers in this specific binder to provide his opening statement to the Committee, and thus did not answer questions, i.e. provide statements included in some of the plaintiffs' FOIA request, by relying on the papers in this binder. Id. at 4–5 & n.2.

obligated to "interview [former] Attorney General Garland" in order to inquire directly from him what records he relied on in making the 17 statements that comprise the plaintiffs' FOIA request. Pls.' Mem. at 12.

Curiously, the plaintiffs also argue that a case decided by another member of this court, Public Employees for Environmental Responsibility v. United States Environmental Protection Agency ("PEER"), 314 F. Supp. 3d 68 (D.D.C. 2018), "is on all fours with this case[,]" while also arguing that the defendant should have "either process[ed] the [plaintiffs' FOIA r]equest according to its best meaning and a liberal construction or deny it." Pls.' Mem. at 13–14. The plaintiffs' argument contradicts itself because in PEER the defendant outright denied the plaintiff's FOIA request that included the "relied upon" language on the basis that it was "an improper interrogatory and that the request [wa]s otherwise overbroad and unduly burdensome," PEER, 314 F. Supp. 3d at 72, 75; whereas here, the defendant reasonably interpreted the plaintiffs' FOIA request and actually conducted a search of records. The Court, therefore, does not understand this case to be the same as PEER, since a search of records was in fact conducted in this case. For all the foregoing reasons, the Court finds that the defendant reasonably interpreted the plaintiffs' FOIA request.

**B.      Whether the Defendant Conducted an Adequate Search**

"To secure summary judgment under [the] FOIA, an agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Reps. Comm. for Freedom of Press v. Fed. Bureau of Ivestigation, 877 F.3d 399, 402 (D.C. Cir. 2017) (internal quotations omitted). "The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."

Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Id.  For example, "if an agency has reason to know that certain places may contain responsive documents, it is obligated under [the] FOIA to search barring an undue burden."  Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 327 (D.C. Cir. 1999).  But, there are "limits to the lengths to which an agency must go in responding to a FOIA request."  Schrecker v. U.S. Dep't of Just., 349 F.3d 657, 664 (D.C. Cir. 2003).  "An agency need not honor a request that requires 'an unreasonably burdensome search.'"  Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com., 907 F.2d 203, 209 (D.C. Cir. 1990).  But, if an agency determines that "a search would be unreasonably burdensome[, it] is required . . . to 'provide sufficient explanation' . . . in a 'detailed affidavit.'"  PEER, 314 F. Supp. 3d at 75 (internal brackets omitted) (quoting Nation Mag.,Wash. Bureau v. U.S. Cust. Serv., 71 F.3d 885, 892 (D.C. Cir. 1995)).

Whether an adequate search was conducted in this case is easily resolved because the plaintiffs "agree that whether the search was reasonably calculated [to uncover all responsive records] turns entirely on whether the Court" agrees with the defendant's construction of the plaintiffs' FOIA request.  Pls.' Reply at 11; Pls.' Mem. at 16.  Accordingly, because the Court has already found that the defendant reasonably construed the plaintiffs' FOIA request, the Court also finds that the defendant's search of records was adequate.

### C.    Whether the Defendant Properly Withheld Certain Records Pursuant to Exemption 5

The defendant "withheld . . . eighty-two pages in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5)."  Talebian Decl. ¶ 8.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an

17

agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "Courts have construed this

exemption to encompass 'the privileges available to Government agencies in civil litigation[,]'"

such as the "'attorney-client privilege, the attorney work-product privilege, or the executive

'deliberative process' privilege.'"  100Reporters v. U.S Depart. of State, 602 F. Supp. 3d 41, 60

(D.D.C. 2022) (quoting U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 263 (2021)

and Tax'n with Representation Fund v. Internal Revenue Serv., 646 F.2d 666, 676 (D.C. Cir.

1981)).

Relevant to this case is the defendant's assertion that the deliberative process privilege

applies to the 82 pages of documents that were withheld.  See Def.'s Mem. at 12.  The focus of

the deliberative process privilege is on "documents 'reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which governmental

decisions and policies are formulated.'"  Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co., 421 U.S.

132, 150 (1975).  "The 'privilege rests on the obvious realization that officials will not

communicate candidly among themselves if each remark is a potential item of discovery and

front page news, and its object is to enhance the quality of agency decisions, by protecting open

and frank discussion among those who make them within the Government."  100Reporters, 602

F. Supp. 3d at 60 (quoting Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532

U.S. 1, 8–9 (2001)).  The Supreme Court has recognized that "human experience teaches that

those who expect public dissemination of their remarks may well temper candor with a concern

for appearances . . . to the detriment of the decisionmaking process.'"  Sears, Roebuck & Co.,

421 U.S. at 150–51 (citing United States v. Nixon, 418 U.S. 683, 705 (1974)).

In order for the defendant to show that records are properly withheld under the

deliberative process privilege, the defendant must show that the records are "predecisional," that

18

is, that "they were generated before the agency's final decision on the matter, and [that] they are 'deliberative,'" meaning that "they were prepared to help the agency formulate its position." Sierra Club, Inc., 592 U.S. at 268. Although, "[i]t is not always self-evident whether a document represents an agency's final decision," the Supreme Court has explained that "[a] document is not final solely because nothing else follows it." Id. "What matters, . . . is . . . whether [a document] communicates a policy on which the agency has settled." Id. If so, it may be properly deemed decisional. However, "a document that leaves agency decisionmakers 'free to change their minds' does not reflect the agency's final decision." Id. at 269. Applying these principles, the Court finds that the talking points listed in the defendant's Vaughn index were properly withheld pursuant to the deliberative process privilege, but requires additional information regarding the four pages of congressional hearing transcripts that have been withheld.

At the outset, the Court notes that the parties agree that the 82 withheld pages "are intra-agency memoranda or letters." Pls.' Mem. at 19; Def.'s Mem. at 12. The defendant explains that four "of the 82 pages were transcript excerpts from prior congressional hearings, selected specifically for use in preparing for upcoming appearances" and the "other 78 pages were talking points drafted to address a variety of potential topics." Def.'s Mem. at 12; see Talebian Decl. ¶ 30. The defendant argues that all "82 pages are both predecisional and deliberative" because "[t]hey were crafted—or in the case of the prior excerpts, specifically curated—for the purpose of preparing the [former] Attorney General for hearings that had not yet occurred and on hypothetical questions that had not yet been asked." Def.'s Mem. at 12; see Talebian Decl. ¶ 31. The defendant therefore contends that the materials were pre-decisional because they were prepared and "created antecedent to any future decision by the [former] Attorney General about

19

what he would say, if anything, when asked questions at specific Congressional hearings."
Talebian Decl. ¶ 31.

Additionally, the defendant argues that the 82 pages are also "deliberative" because "they reflect potential strategies and recommended talking points for use in addressing potential public statements and/or questions from members of Congress during a Congressional hearing." Id. ¶ 32. The defendant explains that the information included in the 82 pages "includes strategic evaluations and assessments made by OLA staff, based upon their expertise and analysis of potential questions from members of Congress." Id. The defendant further represents that the purpose of the 82 pages were to prepare "the [former] Attorney General[ ] as to strategic considerations, policy guidelines, and recommended talking points" in order to "provide [him] with the requisite background knowledge needed to speak on a wide variety of topics and formulate answers to questions in real time when appearing at a Congressional hearing." Id.

Countering the defendant's assertion, the plaintiffs argue that the 82 withheld pages "reflect[ed] a final agency decision as to what the [former] Attorney General should say[,]" and were therefore not pre-decisional. Pls.' Mem. at 19 (internal brackets omitted) (citing Ecological Rts. Found. v. U.S. Env't Prot. Agency, No. 19-cv-980 (BAH), 2021 WL 535725, at *20 (D.D.C. Feb. 13, 2021), opinion vacated in part on reconsideration, 541 F. Supp. 3d 34 (D.D.C. 2021)). As support for its argument, the plaintiffs highlight that "the Attorney General's remarks were internally consistent throughout that time period, [and so] they may well reflect a final prior decision" by the defendant. Id. at 20. The plaintiffs also argue that the defendant's Vaughn index is "deficient because [it] does not address" whether the statements the former Attorney General made were the result of direction from "the Attorney General's superiors[,]" i.e., the White House, or "were prepared, revised, and finalized" "by a low-level employee . . . before

20

being approved by [the] Assistant Attorney General . . . and provided to Attorney General Garland as []'final talking points[.]"  Id. at 19–21.

The Court finds that the talking points described in the defendant's Vaughn index are both predecisional and deliberative.  The talking points are described as providing "proposed responses" or "options for proposed answers" to "potential or hypothetical questions" about either "Departmental matters[,]" and "a variety of topics, some of which "are wholly unrelated to any topic contained in [the p]laintiffs' FOIA request."  See Vaughn index at 1–2.  Additionally, some of the talking points withheld are "older-in-time draft version[s]" of later versions of talking points.  See Vaughn index at 2–3 (referring to 24-cv-200–42 through 24-cv-200–74 and 24-cv-200–78 through 24-cv-200–83).  Moreover, three pages of the talking points contained "redline edits."  See id. at 3 (referring to 24-cv-200–78 through 24-cv-200–80).  Although there is no bright-line on whether talking points are considered predecisional and deliberative, the District of Columbia Circuit has explained that when a superior within an agency seeks a particular record "in part as ammunition for the expected fray, [and] in part as advice on whether and when to duck[,]" such as "a staffer's preparation of 'talking points' for an agency chief about how to handle a potentially explosive press conference," the records may well be withheld pursuant to Exemption 5.  Access Reps. v. Dept' of Just., 926 F.2d 1192, 1196–97 (D.C. Cir. 1991).  Other members of this court have also reached the same conclusion.  See Am. Ctr. for L. and Just. v. Dep't of Just., 325 F. Supp. 3d 162, 171–72 (D.D.C. 2018) (noting that "[w]hile the D.C. Circuit does not appear to have addressed the application of this privilege to public-relations issues, the overwhelming consensus among judges in this District is that the privilege protects agency deliberations about public statements, including the use of talking points"); see also Jud. Watch, Inc. v. U.S. Dep't of State, 306 F. Supp. 3d 97, 115 (D.D.C. 2018) (explaining

that "Courts in this jurisdiction have repeatedly concluded that talking points prepared for use in congressional testimony are deliberative and predecisional documents subject to FOIA Exemption 5"); Leopold v. Off. of Dir. of Nat'l Intel., 442 F. Supp. 3d 266, 276 (D.D.C. 2020) (listing cases and highlighting that the "overwhelming consensus among judges in this District is that" talking points about public statements are covered by the deliberative process privilege).

Moreover, in this case, the "talking points [were] not meant to [be] read verbatim" by the former Attorney General, Talebian Decl. ¶ 36, instead they were used "as references to provide background information and recommendations to be incorporated into the [former Attorney General's] decisionmaking process[,]" id. ¶ 33. The talking points referenced in the defendant's Vaughn index are akin to the example identified by the District of Columbia Circuit in Access Reports, i.e., preparing the former Attorney General for "potentially explosive" Congressional hearings and press conferences. 926 F.2d at 1196. Additionally, the Vaughn index describes that the talking points included, at most, "proposed responses" for the former Attorney General to consider in responding to questions. See generally Vaughn index. Thus, the Vaughn index does not suggest that the talking points included "final decisions" of the defendant since the former Attorney General maintained the discretion to adopt or not adopt the proposed responses. Therefore, the talking points are properly understood as including predecisional material that the former Attorney General could consider before deciding how to respond to questions. And, contrary to the plaintiffs' argument, see Pls.' Mem. at 21–22, just because the former Attorney General's statements were consistent throughout various Congressional hearings and press conferences does not mean that the records conveyed final decisions. See 100Reporters, 602 F. Supp. at 62 (describing that an agency need not "trace the lineage of each draft or evidently deliberative record to ensure that the agency did not, at some point, adopt the predecisional

record, 'formally or informally, as the agency position on an issue or . . . in its dealings with the public'" (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980))).

The Court's finding is bolstered by the fact that the defendant explains that the talking points were used in verbal briefings with the former Attorney General during which Department of Justice staff were also able to factor "in recent news or other developments, differing strategic viewpoints[,] . . . and other dynamic, real-time inputs" to aid in the former Attorney General's preparation. Talebian Decl. ¶ 33. Further, the defendant asserts that "[t]alking points and other materials [were] regularly refined and revised based on" these verbal briefings. Id.

Moreover, the Court agrees with the defendant that there is foreseeable harm in releasing proposed talking points to the public regarding agency "officials' . . . candid, forthright deliberative materials in the context of hearing preparation," id. ¶ 35, because it could chill the "openness with which government officials conduct those deliberations in the future," Def.'s Mem. at 14.

In regards to the four pages of transcripts that the defendant withheld, the defendant contends that the transcript selection "is inherently deliberative in that it represents the strategic selection of factual information that the author deemed relevant for the purpose of preparing for Congressional testimony." Talebian Decl. ¶ 34. The defendant argues that "[t]his strategic analysis involves consideration of what prior Congressional testimony may be relevant for the purposes of responding to potential inquiries and anticipating potential issues." Id. The defendant cites Am. C. L.Union v. Cent. Intel. Agency, which states that "[d]ivulging which facts were culled for inclusion, or even the topics that agency officials selected for [ ] [r]eview, would risk exposure of their internal thought processes[,]" (internal brackets and quotations

omitted); however the defendant does not explain how the facts of that case are helpful to the Court's analysis in determining whether the four pages of transcripts were properly withheld here and it is not apparent to the Court that these cases are factually similar.  105 F. Supp. 3d 35, 52 (D.D.C. 2015); see Def.'s Reply at 13.

The Court therefore finds that it lacks sufficient information from what is provided collectively by the Vaughn index, the Talebian Declaration, and the defendant's briefing to conclude that the defendant properly withheld the four pages of transcripts pursuant to the deliberate process privilege.  The Vaughn index describes that the transcripts "consist[] of selected quotes from Congressional hearing transcripts[,]" see Vaughn index at 1, but it is not apparent why the production of these four pages would divulge the internal "give-and-take consultative process" of the defendant's staff, see Leopold, 442 F. Supp. 3d at 285, especially because the defendant did produce two pages of Congressional hearing transcripts to the plaintiffs in its second and final response.  See Def.'s Second Response Letter at 3–4; see also Pls.' Mem. at 22.  Because the transcripts are presumably pure transcriptions of questions already asked in the past, and answers already provided, the Court is not assured based on the current record that the four pages of transcripts provide such a window into the defendant's deliberative process and therefore would chill the defendant's deliberative process in the future. Further explanation is therefore required.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny without prejudice in part the defendant's motion for summary judgment.  Specifically, the Court denies without prejudice the defendant's motion to the extent it seeks to fully withhold the four pages of transcript excerpts referenced in Bates Stamp Numbers 24-cv-200—1 through 24-cv-200—4.

The Court directs the defendant to supplement its motion for summary judgment regarding the full withholding of these four pages pursuant to Exemption 5, provide an updated declaration, and Vaughn index if deemed necessary, further explaining the basis for the withholding of these four pages. The Court will allow the plaintiffs to respond to the defendant's supplemental filings. The Court will reconsider this component of the defendant's motion once supplemental briefing regarding this issue is completed. The Court grants the defendant's motion in all other respects.

Lastly, the Court will hold in abeyance in part and deny in part the plaintiffs' cross-motion for summary judgment. As explained above, the Court will decide whether to grant in part the remainder of the plaintiffs' cross-motion that relates to the four pages of transcripts after supplemental briefing on this issue is completed.

**SO ORDERED** this 26th day of June, 2026.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.